CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 24 2015

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ABIGAIL LAN PORTER,           )
                              )    Civil Action No. 7:14CV00176
        Plaintiff,            )
                              )    **MEMORANDUM OPINION**
v.                            )
                              )    By: Hon. Glen E. Conrad
                              )    Chief United States District Judge
JACOB CECIL BUCK, et al.,     )
                              )
        Defendants.           )

This declaratory judgment action is presently before the court on the motion for judgment on the pleadings filed by The Peninsula Insurance Company ("Peninsula"). For the reasons set forth below, the motion will be denied.

### Background

On July 28, 2012, plaintiff Abigail Lan Porter was seriously injured in an accident involving two all-terrain vehicles ("ATVs"). The Kawasaki four-wheeled ATV on which Porter was riding as a passenger was driven by Jacob Cecil Buck. The second ATV was operated by Patrick Thomason. The accident occurred while the ATVs were being operated on a public roadway in Franklin County, Virginia. As a result of the accident, Porter sustained a catastrophic brain injury, causing her to incur over $590,000.00 in medical expenses. She filed a personal injury action against Buck and Thomason in the Circuit Court of Franklin County, which remains pending.

At the time of the accident, Buck was insured under a liability insurance policy issued by Foremost Insurance Company. Buck's policy provided a total of $25,000.00 in bodily injury coverage applicable to his operation and use of the vehicle on which Porter was riding as a

passenger. Because Porter's medical expenses exceed the liability coverage provided under Buck's policy, Porter contended that Buck was an underinsured motorist, and sought payment from Peninsula based on the uninsured/underinsured motorist coverage provided in an endorsement ("the Endorsement") to a commercial automobile insurance policy issued to Porter's father, Steve L. Porter ("the Policy").

The Endorsement at issue provides as follows:

> "We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle."

Endorsement at 2. The Endorsement further provides that "the most 'we' will pay for all damages resulting from any one 'accident' is the limit of Uninsured Motorists Insurance shown in the Schedule of Declarations," Id. at 2, which is $500,000.00. See Policy Renewal Declaration at 1.

The Endorsement defines the term "uninsured motor vehicle" to include "a motor vehicle . . . [w]hich is an 'underinsured motor vehicle.'" Id. The Endorsement also contains the following definition of the term "underinsured motor vehicle":

> "Underinsured motor vehicle" means a motor vehicle, when, and to the extent that, the total amount of "bodily injury" and "property damage" coverage applicable to the operation or use of the motor vehicle and "available for payment" for such "bodily injury" or "property damage[,"] including all bonds or deposits of money or securities made pursuant to Article 15 (Section 46.2-435 et seq) of Chapter 3 of Title 46.2 of the Code of Virginia, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the motor vehicle.

Id. at 1. The term "motor vehicle" is not defined in the Endorsement.

2

Peninsula denied Porter's claim for uninsured/underinsured motorist coverage. To resolve the coverage dispute, Porter filed a complaint in the Circuit Court of Franklin County, seeking a declaratory judgment that the uninsured/underinsured motorist coverage provided in the Endorsement is applicable to the injuries she sustained in the ATV accident.

Peninsula removed the action to this court on the basis of diversity jurisdiction, and then moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Peninsula argues that an ATV is not a "motor vehicle" and, thus, that it is not an "uninsured motor vehicle" within the terms of the Endorsement. On this basis, Peninsula maintains that it is entitled to judgment as a matter of law.[1] See Peninsula's Reply Br. at 2 (emphasizing that the "single, determinative question that the Motion[] asks the Court to decide" is whether "the Buck ATV [is] a motor vehicle, particularly as that term is used in the Insurance Contract's UM/UIM endorsement").

## Standard of Review

In reviewing a Rule 12(c) motion filed by a defendant, the court applies the same standard that would apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). The court must accept all of the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). To survive a motion for judgment on the pleadings, the complaint must contain sufficient facts "to

---

[1] At this stage of the proceedings, Peninsula does not dispute that Porter is an "insured" for purposes of the coverage provided under the Endorsement. The Endorsement defines the term "insured" to include the named insured "or any 'family member.'" Endorsement at 1-2. The term "family member" is defined as "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household, including a ward or foster child." Id. at 1. In this case, Porter alleges in her complaint that she is the daughter of the named insured, and that she "resided with her father and her mother . . . at their residence . . . on the date that she was injured." Decl. J. Compl. at 6.

3

raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering a Rule 12(c) motion, the court may consider exhibits attached to or referred to in the complaint. See Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).

## Discussion

### I. Applicable Law

Under Virginia law, which the parties agree applies in the instant case, the interpretation of an insurance policy presents a question of law. Va. Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009). "Courts interpret insurance policies, like other contracts, by determining the parties' intent from the words they have used in the document." Id. The policy's provisions "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." Id.

When a contested policy term is unambiguous, courts must apply its plain meaning as written. Id. "However, if disputed policy language is ambiguous and can be understood to have more than one meaning, [courts must] construe the language in favor of coverage and against the insurer." Id.; see also S.F. v. W. Am. Ins. Co., 463 S.E.2d 450, 452 (Va. 1995) (emphasizing that "language is ambiguous when it may be understood in more than one way," and that "ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it") (internal citations and quotation marks omitted). Accordingly, "when an insurer seeks to limit coverage under a policy, the insurer must use language that is reasonable, clear, and unambiguous." Williams, 677 S.E.2d at 302; see also Dooley v. Hartford Accident & Indem. Co., 716 F.3d 131, 135 (4th Cir. 2013) (noting that the burden is "rightfully place[d] . . . on

4

the insurer, the customary drafter of the policy, to articulate clearly both the coverage afforded and any exclusions from that coverage").

## II. The Uninsured Motorist Endorsement

In moving for judgment on the pleadings, Peninsula contends that an ATV is not a "motor vehicle" and, thus, that it is not an "uninsured motor vehicle" for purposes of the uninsured motorist coverage provided under the Endorsement. Although the Endorsement does not define the term "motor vehicle," Peninsula presents three primary arguments to support its position that the term unambiguously excludes ATVs. First, Peninsula argues that the term "motor vehicles" must be considered in conjunction with the term "auto," which is defined in another section of the Policy to exclude vehicles that are not designed principally for use on public roads. Second, Peninsula argues that its position is supported by the Supreme Court of Virginia's decision in State Farm Mutual Automobile Insurance Company v. Gandy, 383 S.E.2d 717, 719 (Va. 1989), in which the Supreme Court held that expenses for treatment of bodily injuries sustained by an insured who was struck by a forklift were validly excluded from coverage under the medical payments provision of an insurance policy. Finally, Peninsula argues that its position is supported by several Virginia statutes, which exclude ATVs from the requirements of licensure and registration, and limit their use on public highways. For the following reasons, the court finds Peninsula's arguments unpersuasive.

Peninsula first argues that the term "motor vehicle" must be considered in conjunction with the term "auto," which is defined in another section of the Policy to exclude vehicles that are not

5

designed principally for use on public roads.[2] The problem with this argument is that the Endorsement's plain language demonstrates that it operates separately from the other Policy provisions. The Endorsement states in large capital letters that it "CHANGES THE POLICY," and that it includes words and phrases that have special meaning for purposes of the Endorsement. Endorsement at 1. The coverage provided under the Endorsement is not limited to damages resulting from the operation of an uninsured "auto." Instead, Peninsula used the broader term "motor vehicle." See USAA Casualty Ins. Co. v. Yaconiello, 309 S.E.2d 324, 324-25 (Va. 1983) (recognizing that the term "motor vehicle" has a broader meaning than the word "automobile"). Thus, even if Peninsula is correct that an ATV is not an "auto" for purposes of other provisions of the Policy, this does not compel the conclusion that an ATV is not a "motor vehicle" for purposes of the Endorsement.

Peninsula's reliance on Gandy fares no better. In Gandy, the Supreme Court of Virginia was tasked with deciding "whether expense for treatment of bodily injuries, sustained by an insured when struck by a forklift, was excluded validly from coverage under the medical payments provisions of the insurance policy." Gandy, 383 S.E.2d at 258. The Supreme Court assumed, without deciding, that the language of inclusion in the policy's medical payments provisions, standing alone, "arguably afford[ed] coverage because a forklift qualifies within the definition of 'motor vehicle,' and the insured sustained 'bodily injury . . . caused by accident . . . through being struck by [a motor vehicle].'" Id. at 259. However, the policy's medical payments provisions

---

[2] Section V of the Business Coverage Auto Form defines the term "auto" as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads but does not include 'mobile equipment.'" Business Coverage Auto Form at 9. The term "mobile equipment" is defined to include, among other things, "[b]ulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads." Id. at 11.

6

were subject to an exclusion, which made them inapplicable to bodily injuries sustained by an insured "through being struck by . . . a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads." Gandy, 383 S.E.2d at 717 (internal quotation marks omitted). Under the facts presented, the Supreme Court concluded that "the forklift, which struck the insured on private property, was 'equipment designed for use principally off public roads,'" and, thus, that coverage was precluded by the exclusion. Id. at 717-18. In this case, the Endorsement contains no similar exclusion precluding coverage for injuries or damages arising from the operation of a vehicle designed for use principally off roads. Accordingly, Gandy does not compel the result urged by Peninsula.

In its final argument, Peninsula maintains that certain Virginia statutes support its position that an ATV is not a "motor vehicle" for purposes of the Endorsement. Although an ATV is defined in the Code of Virginia as a type of "motor vehicle," Va. Code § 46.2-100, Peninsula emphasizes that ATVs are excluded from the statutory licensure and registration requirements applicable to other motor vehicles; that ATVs are recognized, by statute, as being manufactured for off-highway use; and that ATVs may be lawfully driven on public highways in only limited circumstances. See Va. Code §§ 46.2-100, 46.2-679.1, 46.2-705 & 46.2-915.1. Thus, Peninsula contends that ATVs are implicitly excluded from the coverage required by Virginia's uninsured motorist statute, Va. Code § 38.2-2206, and that the Endorsement should be construed in the same manner. For the following reasons, however, the court finds this argument unpersuasive in light of the Supreme Court of Virginia's decision in Hill v. State Farm Mutual Automobile Insurance Company, 375 S.E.2d 727 (Va. 1989).

7

In Hill, the Supreme Court considered "whether a 'moped' [was] a 'motor vehicle' within the terms of the uninsured motorist coverage in an automobile liability insurance policy."[3] Hill, 375 S.E.2d at 728. In rejecting a similar statutory argument, the Supreme Court explained that "[t]here is no prohibition against an insurer offering broader coverage than the minimum prescribed by law," and that the coverage mandated by statute "take[s] effect only where an insurer seeks, by policy language, to narrow, avoid, vary or restrict the coverage the legislature has required." Id. at 729. The Court emphasized that "[w]hen the policy affords broader coverage than the law requires, no inconsistency exists; the policy provides all the coverage the statute demands, and more." Id.

In this case, the language of the Endorsement is not in conflict with the minimum coverage provisions required by Virginia law. See Va. Code 38.2-2206. Consequently, the court must look to the language of the Endorsement itself, and give the words used "their ordinary and customary meaning when they are susceptible of such construction." Hill, 375 S.E.2d at 729. In Hill, the Supreme Court noted that the term "motor vehicle" is "seemingly unambiguous," and that it has been defined by one dictionary as "'a self-propelled wheeled conveyance that does not run on rails.'" Id. (quoting The American Heritage Dictionary 817 (2d ed. 1982)). An ATV would plainly qualify as a "motor vehicle" under this definition cited by the Supreme Court, and the Endorsement provides no indication that ATVs are intended to be excluded from coverage. Likewise, as was true in Hill, the Endorsement "contains no indication to an insured that

---

[3] The policy in Hill provided that the insurer would "pay in accordance with Section 38.1-381 of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured or his legal representative shall legally be entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by the accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle." Hill, 375 S.E.2d at 728.

8

cross-reference must be made to provisions scattered through the Code of Virginia in order to determine the meaning of [this] seemingly unambiguous term . . . ." Id.

In its brief in support of the pending motion, Peninsula notes that another dictionary defines a "motor vehicle" as "'a vehicle on wheels having its own motor and not running on rails or tracks, for use on streets or highways; especially an automobile or truck.'" Peninsula's Br. in Supp. 19 (quoting Webster's New World Dictionary 930 (2d Coll. Ed. 1984)). Even if this particular definition could be read to support the more limited interpretation advocated by Peninsula, it does not help the insurer. As explained above, "[a] term is ambiguous if it is susceptible of two or more meanings," Hill, 375 S.E.2d at 730, and any ambiguous policy language must be construed against the insurer and in favor of coverage. See Williams, 677 S.E.2d at 302 ("[I]f disputed policy language is ambiguous and can be understood to have more than one meaning, [courts must] construe the language in favor of coverage and against the insurer.").

Here, Peninsula, in selecting the language of the Endorsement, elected to use the term "motor vehicle," without defining this term in a particular manner or otherwise limiting its application. Even if the court assumes, without deciding, that Peninsula could have excluded ATVs from the Endorsement's uninsured motorist coverage without violating the minimum requirements imposed under Virginia law, Peninsula nevertheless failed to do so in a clear and unambiguous manner. Because any doubt concerning the meaning of disputed policy language must be resolved against the insurer, the court concludes that the term "motor vehicle," as used in the Endorsement, includes ATVs. See Reese v. Wheeler, No. 99C-04-002-RFS, 2004 Del. Super. LEXIS 180, at *18-20 (Del. Super. Ct. June 10, 2004) (holding, under Virginia law, that a yard truck that was not equipped to be driven legally on public roads nonetheless qualified as an "motor

9

vehicle" for purposes of the uninsured motorist section of an automobile insurance policy issued by Commercial Union Insurance Company, since the uninsured motorist section contained no provisions which clearly excluded such vehicles from coverage) (citing Hill, 375 S.E.2d at 730). Accordingly, Peninsula is not entitled to judgment on the pleadings.

## Conclusion

For the reasons stated, Peninsula's motion for judgment on the pleadings will be denied. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 24th day of February, 2015.

*/s/ Glen Conrad*
Chief United States District Judge