CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 28 2015

JULIA C. DUDLEY, CLERK
BY: /s/ Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ABIGAIL LAN PORTER, | ) | |
| | ) | Civil Action No. 7:14CV00176 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. Glen E. Conrad |
| JACOB CECIL BUCK, et al., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

Abigail Porter filed this declaratory judgment action against The Peninsula Insurance Company ("Peninsula"), seeking a declaration that the injuries she sustained as a passenger on an underinsured all-terrain vehicle were covered under the uninsured/underinsured motorist endorsement to an insurance policy issued by Peninsula. On February 24, 2015, the court denied Peninsula's motion for judgment on the pleadings. The case is now before the court on Peninsula's motion for reconsideration of that decision and the parties' cross-motions for summary judgment. For the reasons set forth below, Peninsula's motions will be denied and Porter's motion for summary judgment will be granted.

## Background

On July 28, 2012, Porter was seriously injured in an accident involving two all-terrain vehicles ("ATVs"). The Kawasaki four-wheeled ATV on which Porter was riding as a passenger was owned and operated by Jacob Cecil Buck. The second ATV was operated by Patrick Thomason. The accident occurred while the ATVs were being operated on a public roadway in Franklin County, Virginia. As a result of the accident, Porter sustained a catastrophic brain injury, causing her to incur over $590,000.00 in medical expenses. She filed a personal injury

action against Buck and Thomason in the Circuit Court of Franklin County, which remains pending.

At the time of the accident, Buck's ATV was insured under a liability policy issued by Foremost Insurance Company. Buck's policy provided $25,000.00 in bodily injury coverage applicable to his operation and use of the ATV. Because Porter's medical expenses exceed the liability coverage provided under Buck's policy, Porter sought payment from Peninsula based on the uninsured/underinsured motorist coverage ("UM/UIM coverage") provided in an endorsement ("the Endorsement") to a commercial automobile insurance policy issued to her father, Steve L. Porter ("the Policy").

The Endorsement at issue provides as follows:

> "We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle."

Endorsement, Docket No. 1-1 at 39.

Part D of the Endorsement defines who is insured under the Endorsement. Part D provides as follows:

Who Is Insured

1. "You" or any "family member"

2. Anyone else "occupying" a "covered auto"

3. Anyone for damages he or she is entitled to recover because of "bodily injury" to which this coverage applies, sustained by another "insured" under 1 or 2 above.

Id.

The Endorsement defines the term "uninsured motor vehicle" to include "a motor vehicle . . . [w]hich is an 'underinsured motor vehicle.'" Endorsement 1, Docket No. 1-1 at 38. The term "underinsured vehicle" is defined as follows:

> "Underinsured motor vehicle" means a motor vehicle, when, and to the extent that, the total amount of "bodily injury" and "property damage" coverage applicable to the operation or use of the motor vehicle and "available for payment" for such "bodily injury" or "property damage[,"] including all bonds or deposits of money or securities made pursuant to Article 15 (Section 46.2-435 et seq) of Chapter 3 of Title 46.2 of the Code of Virginia, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the motor vehicle.

Id. The term "motor vehicle" is not defined in the Endorsement.

Peninsula denied Porter's claim for UM/UIM coverage. To resolve the coverage dispute, Porter filed a complaint in the Circuit Court of Franklin County, seeking a declaratory judgment that the UM/UIM coverage provided in the Endorsement is applicable to the injuries she sustained in the ATV accident.

Peninsula removed the action to this court on the basis of diversity jurisdiction, and then moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. In seeking judgment on the pleadings, Peninsula argued that an ATV is not a "motor vehicle" and, thus, that Buck's ATV is not an "uninsured motor vehicle" within the terms of the Endorsement. See Peninsula's Reply Br., Docket No. 23 at 2 (emphasizing that the "single, determinative question that the Motion[] asks the Court to decide" is whether "the Buck ATV [is] a motor vehicle, particularly as that term is used in the Insurance Contract's UM/UIM endorsement").

On February 24, 2015, the court denied Peninsula's motion for judgment on the pleadings. See Porter v. Buck, No. 7:14CV00176, 2015 U.S. Dist. LEXIS 21815 (W.D. Va. Feb. 24, 2015).

3

In so doing, the court rejected Peninsula's argument that the term "motor vehicle" must be considered in conjunction with the term "auto," which is defined in another section of the Policy to exclude vehicles that are not designed principally for use on public roads. The court emphasized that the Endorsement specifically states that it "**CHANGES THE POLICY**," and that it includes words or phrases that have special meaning for purposes of the Endorsement. The court noted that the coverage provided under the Endorsement is not limited to damages resulting from the operation of an uninsured or underinsured "auto," and that Peninsula instead used the broader term "motor vehicle."

The court also found unpersuasive Peninsula's reliance on the Supreme Court of Virginia's decision in State Farm Mutual Automobile Insurance Co. v. Gandy, 383 S.E.2d 717 (Va. 1989), in which the Supreme Court held that expenses for treatment of bodily injuries sustained by an insured who was struck by a forklift were validly excluded from coverage under the medical payments provision of an insurance policy. In reaching its decision, the Supreme Court assumed, without deciding, that the language of inclusion in the policy's medical payments provision, standing alone, "arguably afforded coverage because a forklift qualifies within the definition of 'motor vehicle,' and the insured sustained 'bodily injury . . . caused by accident . . . through being struck by [a motor vehicle].'" Gandy, 383 S.E.2d at 718. However, the policy's medical payments provisions included an exclusion, which made them inapplicable to bodily injuries sustained by an insured "through being struck by . . . a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads." Id. at 717. Under the facts presented, the Supreme Court concluded that "the forklift, which struck the insured on private property, was 'equipment designed for use principally off public roads,'" and, thus, that

4

coverage was precluded by the exclusion. Id. at 717-18. Unlike the policy provisions in Gandy, the Endorsement at issue in this case contains no similar exclusion precluding coverage for injuries or damages arising from the operation of a vehicle designed for use principally off public roads. Accordingly, the court concluded that Gandy did not compel the result urged by Peninsula.

Finally, relying on the Supreme Court of Virginia's decision in Hill v. State Farm Mutual Automobile Insurance Co., 375 S.E.2d 727 (Va. 1989), the court rejected Peninsula's argument that the court should look to various Virginia statutory provisions to determine whether an ATV is a "motor vehicle" for purposes of the Endorsement. In Hill, the Supreme Court considered "whether a 'moped' [was] a 'motor vehicle' within the terms of the uninsured motorist coverage in an automobile liability insurance policy." Id. at 728. In refusing to rely on various statutory provisions, which excluded mopeds from the definition of the term "motor vehicle" and from the requirements of licensure and registration, the Supreme Court emphasized that "the policy contains no indication to an insured that cross-reference must be made to provisions scattered throughout the Code of Virginia in order to determine the meaning of the seemingly unambiguous term 'motor vehicle.'" Id. at 729. Rather than relying on such statutory provisions, the Supreme Court referred to a dictionary that defined the term "motor vehicle" as "'a self-propelled wheeled conveyance that does not run on rails.'" Id. (quoting The American Heritage Dictionary 817 (2d ed. 1982)). Given this definition, the Supreme Court found that there was "no clear indication to a careful reader of the policy that mopeds [were] intended to be excluded from coverage," and that any ambiguity had to be construed against the insurer. Id. at 729-30. Applying these principles in the instant case, the court concluded that an ATV plainly qualifies as a "motor vehicle" under the definition cited by the Supreme Court, and that such vehicles are not otherwise excluded from

5

coverage in a clear and unambiguous manner. Since any doubt concerning the meaning of disputed policy language must be resolved against the insurer under Virginia law, the court held "that the term 'motor vehicle,' as used in the Endorsement, includes ATVs." Porter, 2015 U.S. Dist. LEXIS 21815, at *14.

Peninsula has now moved for reconsideration of the court's decision to deny its motion for judgment on the pleadings. The parties have also filed cross-motions for summary judgment. The motions have been fully briefed and argued and are ripe for decision.

## Standards of Review

The resolution of a motion for reconsideration is committed to the discretion of the district court. Am. Canoe Ass'n v. Murphy Farms Inc., 326 F.3d 505, 514-15 (4th Cir. 2003). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." Id. at 514. Courts have observed that reconsideration of interlocutory orders is appropriate where "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983). Reconsideration may also be appropriate where there has been an intervening change or development in the applicable law. Am. Canoe Ass'n, 326 F.3d at 515.

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court

6

must view the facts in the record in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## Discussion

### I. Motion for Reconsideration

The court will first address Peninsula's motion for reconsideration of the decision to deny its motion for judgment as a matter of law. Peninsula argues that reconsideration is appropriate in light of an intervening decision by United States Magistrate Judge Tommy E. Miller in Montgomery v. Progressive Advanced Insurance Co., No 2:14CV00231, 2015 U.S. Dist. LEXIS 27820 (E.D. Va. Mar. 6, 2015). Although Judge Miller ultimately found that a side-by-side ATV was an uninsured or underinsured motor vehicle for purposes of a motor vehicle liability policy, and therefore found that the insured was entitled to UM/UIM coverage, Peninsula contends that Judge Miller's decision provides "important clarification regarding [this court's] analysis of whether the Buck ATV can be construed as a motor vehicle for purposes of UIM insurance." Br. in Supp. of Mot. for Reconsideration, Docket No. 31 at 5. Having reviewed the applicable policy provisions in Montgomery, the court finds Peninsula's argument unpersuasive. As explained below, those provisions are clearly distinguishable from the policy provisions at issue in this case. Accordingly, even if an unpublished decision from another district could provide a valid basis for reconsideration, Peninsula is not entitled to relief.

In Montgomery, the plaintiff, Amanda Montgomery, was injured in an out-of-state accident involving a 2007 Yamaha Rhino owned and operated by her brother. The Rhino was described as "a four-wheel vehicle with two bucket seats in the front, a bench seat in the back, an open top, open sides, and roll bars," which had been modified to include rearview lights, rearview

7

mirrors, and seatbelts. Montgomery, 2015 U.S. Dist. LEXIS 27820, at *3. Following his purchase of the vehicle, Montgomery's brother registered the Rhino with the Arizona Division of Motor Vehicles, and obtained license plates and insurance for the vehicle. The record revealed that Montgomery's brother used the Rhino primarily for driving on public roads. At the time of the accident, however, Montgomery's brother was driving the Rhino off-road at a park in Arizona, where there were no improved, paved, or maintained roads.

Following the accident, Montgomery filed a declaratory judgment action against Progressive Advanced Insurance Company ("Progressive"), seeking a declaration that the Rhino was an uninsured or underinsured motor vehicle as defined in a motor vehicle liability policy issued to her by Progressive (the "Progressive policy"). The Progressive policy's uninsured motorist coverage was contained in Part C of the policy. See No. 2:14CV231, Docket No. 11-2 at 19. The insuring agreement provided that Progressive would pay, in accordance with Virginia Code § 38.2-2206, "damages which an 'insured' . . . is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' or an 'underinsured motor vehicle' because of . . . 'Bodily injury' sustained by an 'insured' and caused by an accident . . . ." Id.

The Progressive policy specifically defined an "uninsured motor vehicle" as "a land motor vehicle or trailer of any type . . . [t]o which no liability, bond, policy, deposit or money or security applies at the time of the accident in at least the minimum limits required by Va. Code Ann. Section 46.2-472." Id. at 20. The Progressive policy defined an "underinsured motor vehicle" as "a land motor vehicle or trailer of any type for which the sum of . . . [t]he limits of liability under all liability bonds or policies" is less than the uninsured motorists coverage under the Progressive policy. Id. at 19.

8

Neither party disputed that the Rhino was both uninsured and underinsured for purposes of the Progressive policy. Instead, they disputed "whether the Rhino is a motor vehicle, defined in the [p]olicy as 'a land motor vehicle or trailer of any type.'" Montgomery, 2015 U.S. Dist. LEXIS 27820, at *13. In resolving this issue, Judge Miller declined to rely on the various Virginia statutory provisions regarding ATVs. Instead, as this court did in its previous decision, Judge Miller utilized the dictionary definition of the term "motor vehicle" referenced by the Supreme Court of Virginia in Hill v. State Farm Mutual Automobile Insurance Co., 373 S.E.2d 727 (Va. 1989). Applying that definition, Judge Miller held that the Rhino was a land motor vehicle. See Montgomery, 2015 U.S. Dist. LEXIS 27820, at *16 (emphasizing that "[t]he Rhino is most certainly 'a self-propelled wheeled conveyance that does not run on rails'") (quoting Hill, 375 S.E.2d at 729).

Unlike the Endorsement at issue in the instant case, the Progressive policy's definitions of "uninsured motor vehicle" and "underinsured motor vehicle" were qualified by an exclusion set forth in the same part of the policy. That exclusion provided as follows:

In addition, neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes:

1. A farm type tractor or other equipment designed for use principally off public roads while not on public roads; or

2. Any vehicle:
   a. Operated on rails or crawler treads; or
   b. While located for use as a residence or premises.

Montgomery, No. 2:14CV00231, Docket No. 11-2 at 20. Accordingly, Judge Miller proceeded to determine whether this language of exclusion applied to the Rhino such that the Rhino was not included in the Progressive policy's definition of an uninsured or underinsured motor vehicle.

9

After summarizing several decisions involving similar exclusions, including the Supreme Court of Virginia's decision in State Farm Mutual Automobile Insurance Co. v. Gandy, 383 S.E.2d 717 (Va. 1989), which involved a forklift, and its decision in Moore v. State Farm Mutual Automobile Insurance Co., 448 S.E.2d 611 (Va. 1994), which involved a family-class stock car, Judge Miller determined that the Rhino did not clearly fall within the exclusion. Although the owner's manual for the Rhino expressly indicated that it was designed for off-road use, Judge Miller observed that, in reality, "the vehicle was equipped and licensed to legally operate both on public highways and off-road, and was operated both on and off public roads," and that it was more similar to a moped or stock car than to a forklift. Montgomery, 2015 U.S. Dist. LEXIS 27820, at *21. "Construing the exclusionary language in the policy against [Progressive], and applying the normal and customary use of the phrase 'farm type tractor or other equipment designed for use principally off public roads,'" Judge Miller found that the Rhino did not clearly fall within the exclusion. Id. Accordingly, he held that the Rhino was an "uninsured or underinsured motor vehicle" as defined in the Progressive policy, and granted summary judgment in favor of the insured. Id. at *21-22.

In seeking reconsideration based on Montgomery, Peninsula argues that Buck's ATV "differs notably" from the Rhino on which Montgomery was riding as a passenger, and that "there is no possible question here of the Buck ATV's purely off-road character." Docket No. 31 at 11. Unlike the Progressive policy, however, the Endorsement at issue in this case does not specifically exclude vehicles designed for use principally off public roads, or any other particular type of land motor vehicle, from the definition of "uninsured motor vehicle" or "underinsured motor vehicle."

10

While Peninsula recognizes this distinction in its brief in support of the motion for reconsideration, it nonetheless argues that the Peninsula Policy essentially "does the very same thing, though it goes about it in a slightly different way." Docket No. 31 at 12. Specifically, Peninsula argues, as it did previously, that the term "motor vehicle," as used in the Endorsement, should be considered in conjunction with the term "auto," which is defined in another section of the Policy to exclude vehicles that are not designed principally for use on public roads. The problem with this argument is that the Endorsement states in bold, capital letters that it **"CHANGES THE POLICY,"** and that it includes words or phrases that have special meaning for purposes of the Endorsement. Docket No. 1-1 at 38. The coverage provided under the Endorsement is not limited to damages resulting from the operation of an uninsured "auto." Instead, Peninsula used the broader term "motor vehicle." See USAA Cas. Ins. Co. v. Yaconiello, 309 S.E.2d 324, 325 (Va. 1983) (recognizing that the term "motor vehicle" has a broader meaning than the word "automobile"); see also Equitable Gen. Ins. Co. v. Williams, 620 S.W.2d 608, 610 (Tex. Ct. App. 1981) ("The term motor vehicle has a much broader meaning than the word automobile."). Moreover, Peninsula elected not to define the term "motor vehicle" in a particular manner or to otherwise limit its scope to certain types of land motor vehicles.

In light of these distinctions between the Endorsement and Part C of the Progressive policy, the court concludes that Judge Miller's decision in Montgomery does not warrant reconsideration of the court's previous decision to deny Peninsula's motion for judgment as a matter of law. Accordingly, Peninsula's motion for reconsideration will be denied.

11

## II. Motions for Summary Judgment

In moving for summary judgment, Peninsula argues that the court's previous decision left undecided one issue that was raised in Peninsula's initial brief in support of its motion for judgment on the pleadings. Specifically, Peninsula contends that certain language contained in the Policy's Renewal Declaration and Business Auto Coverage Form limits the coverage provided by the Endorsement to accidents involving "autos."

Item Two of the Renewal Declaration, described as the "Schedule of Coverages and Covered Autos," includes a four-column table listing the types of coverage available under the Policy, covered auto symbols, the policy limit for each type of coverage, and the premium for each type of coverage. Renewal Declaration, Docket No. 1-1 at 15. The following paragraph is located above the table:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more symbols from ITEM THREE next to the name of the coverage.

Id. A "charge" is shown in the premium column for the following types of coverage: Liability, Medical Expense and Income Loss Benefits, Uninsured Motorists, Physical Damage: Comprehensive Coverage, and Physical Damage: Collision Coverage. Id.

The Business Auto Coverage Form includes a section on Covered Autos. It states that "Item Two of the Declarations shows the 'autos' that are covered 'autos' for each of your coverages," and that "[t]he symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'" Business Auto Coverage Form, Docket No. 1-1 at 23. For "Uninsured Motorists" coverage, Item Two lists the symbol "6" in the column for Covered Auto Symbols. Docket No. 1-1 at 15. According to the Business Auto Coverage Form, the symbol

12

"6" represents "[o]only those 'autos' you own that because of the law of the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage."[1] Docket No. 1-1 at 23.

Section V of the Business Auto Coverage Form contains a number of definitions. The term "auto" is defined as a "land motor vehicle, 'trailer,' or semitrailer designed for travel on public roads but does not include 'mobile equipment.'" Docket No. 1-1 at 31. The term "mobile equipment" is defined to include "bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads." Docket No. 1-1 at 33.

Relying on the foregoing provisions of the Renewal Declaration and the Business Auto Coverage Form, Peninsula argues that the UM/UIM coverage provided by the Endorsement is limited to accidents involving "autos," and that Buck's ATV is not an "auto," since it is not a vehicle designed for travel on public roads. Peninsula emphasizes that the ATV was not registered or licensed by the Virginia Department of Motor Vehicles, and that its owner's manual specifically indicates that the ATV is designed for off-road use only and should not be driven on public roads.

In resolving this issue, the court must consider the established principles of Virginia law regarding the interpretation of insurance policies. When interpreting such agreements, courts determine the parties' intent from the words used in the policy. Va. Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009). The policy's provisions "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." Id. When a disputed policy term is

---

[1] Item Four of the Declaration contains a "Schedule of Covered Autos You Own." The Schedule lists a 2001 Jeep Cherokee and a 2002 Chevrolet Silverado. Docket No. 1-1 at 21.

13

unambiguous, the court must apply its plain meaning as written. Id. "However, if disputed policy language is ambiguous and can be understood to have more than one meaning, [the court must] construe the language in favor of coverage and against the insurer." Id. Accordingly, "when an insurer seeks to limit coverage under a policy, the insurer must use language that is reasonable, clear, and unambiguous." Id.; see also Dooley v. Hartford Accident & Indem. Co., 716 F.3d 131, 135 (4th Cir. 2013) (noting that the burden is "rightfully place[d] . . . in the insurer, the customary drafter of the policy, to articulate clearly both the coverage afforded and any exclusions from that coverage").

Applying these established principles, the court remains convinced that the insurance policy does not clearly and unambiguously limit coverage under the Endorsement to accidents involving "autos." Although Item Two of the Renewal Declaration indicates that the coverages provided under the policy "apply only to those autos shown as covered autos," the Endorsement includes a statement at the very top of the page which states, in bold, capital letters that "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" Docket No. 1-1 at 38. The Endorsement then defines an insured as "You" or any "family member," and it provides no indication that its coverage is limited to accidents involving the operation of an uninsured or underinsured "auto." Id. at 39. Instead, the Endorsement states that Peninsula will pay "all sums the [insured or any family member] is legally entitled to recover as damages from the owner or operator of an 'uninsured motor vehicle.'" Id. at 38 (emphasis added). As noted above, the Endorsement does not define the term "motor vehicle," nor does it include any language which would clearly exclude ATVs from the definition of "uninsured motor vehicle" or "underinsured motor vehicle."

14

Moreover, Peninsula has conceded that the UM/UIM coverage provided under the policy is not limited to the "covered autos" described in the Business Auto Coverage Form, even though Item Two of the Renewal Declaration includes language to that effect. Although Peninsula previously asserted as a defense to this action that the Endorsement's UM/UIM coverage is limited to "covered autos," and that the Buck ATV is not a "covered auto[]" since it is not owned by Steve Porter, Peninsula has affirmatively withdrawn that defense. See Br. in Supp. of Mot. for Summ. J., Docket No. 29 at 4, n. 6 ("Peninsula no longer relies as a defense upon whether Porter could be said to have occupied a covered 'auto,' and it stipulates to a withdrawal of that particular defense . . . ."). When the court inquired about this issue during the hearing on the pending motions, Peninsula acknowledged that the Endorsement, itself, does not limit coverage to accidents involving "covered autos."[2] The same, of course, can be said about accidents involving "autos," as that term is defined in Section V of the Business Coverage Form. If Peninsula had intended to limit the coverage provided in the Endorsement to accidents involving uninsured or underinsured "autos," it could have used that term in the Endorsement. Instead, Peninsula elected to use the

---

[2] Peninsula's concession regarding the "covered auto" defense is understandable in light of existing case law on the issue. See, e.g., Grinnell Mut. Reinsurance Co. v. Haight, 697 F.3d 582, 587-91 (7th Cir. 2012) (holding that the plaintiff was entitled to UIM coverage under a policy issued to her father even though she was not riding in a "covered auto" during the accident, where the text of the "Who is an Insured" section of the UM/UIM endorsement contained no requirement that the named insured or family member must have been occupying a "covered auto"); Reisig v. Allstate Ins. Co., 645 N.W.2d 544, 550-51 (Neb. 2002) (holding that an insurance policy was ambiguous as to whether uninsured coverage was limited to certain "covered autos," and that such ambiguity had to be construed in favor of the insured, where the declarations sheet contained a notation referring to certain described autos, but the uninsured motorist endorsement, which read in capital letters that it "CHANGES THE POLICY," did not restrict uninsured motorist coverage to covered autos); Stoddard v. Citizens Ins. Co., 643 N.W.2d 265, 269-70 (Mich. Ct. App. 2002) (holding that an uninsured motorist endorsement "unambiguously provide[d] coverage in circumstances beyond those involving . . . covered auto[s]," despite language to the contrary in the policy's Schedule of Coverages and Covered Autos list); Bushey v. Northern Assurance Co., 766 A.2d 598, 603 (Md. 2001) (rejecting the insurer's argument that the uninsured motorist endorsement restricted coverage to only those instances involving a "covered auto," and emphasizing that "the references to covered autos in the general structure of the policy on which [the insurer] relies at best create an ambiguity").

15

broader term "motor vehicle," without defining the term in a particular manner or otherwise limiting its application.

Even if the terms of the Endorsement were considered ambiguous with regard to whether its coverage is implicated only by accidents involving uninsured or underinsured "autos," the result is the same. As explained above and in the court's previous opinion, any ambiguous policy language must be construed "in favor of coverage and against the insurer."[3] Williams, 677 S.E.2d at 302; see also Seals v. Erie Ins. Exch., 674 S.E.2d 860, 862 (Va. 2009) ("Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.") (internal citation omitted).

For the reasons stated, the court concludes that the coverage afforded by the Endorsement is not limited to accidents involving "autos." The court also remains convinced that the term "motor vehicle," as used in the Endorsement, includes ATVs. Because it is undisputed that Porter is an "insured" for purposes of the Endorsement, and that Buck's ATV is "underinsured," the court concludes that the UM/UIM coverage provided in the Endorsement is applicable to the injuries Porter sustained in the ATV accident.

---

[3] To the extent Peninsula suggests that it would be appropriate for the court to consider parol evidence to resolve the ambiguity, the court disagrees. In Virginia, parol evidence is admissible to explain a latent ambiguity, but it is not admissible to resolve a patent ambiguity. Zehler v. E.L. Bruce Co., Inc., 160 S.E.2d 786, 789 & n.5 (Va. 1968). Here, it is clear that any ambiguity as to whether the Endorsement's UM/UIM coverage applies only to "autos" is a patent ambiguity. See Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC, 785 F. Supp. 2d 535, 548-49 (E.D. Va. 2011) ("Virginia courts have consistently distinguished between patent ambiguity – ambiguity on the face of the instrument itself – and latent ambiguity – ambiguity that manifests only upon consideration of extrinsic evidence."). Consequently, parol evidence cannot be considered to resolve the ambiguity, and such ambiguity must be construed in favor of the insured. See Zehler, 160 S.E.2d at 789 (explaining that "parol evidence cannot be considered to explain a patent ambiguity"); Lott v. Scottsdale Ins. Co., 827 F. Supp. 2d 626, 632 (E.D. Va. 2011) ("[P]atent ambiguities in insurance policies are routinely construed against the insured.").

## Conclusion

For the reasons stated, the court will grant summary judgment in favor of Porter. Peninsula's motions for reconsideration and for summary judgment will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 28th day of September, 2015.

_____
Chief United States District Judge

17

Case 7:14-cv-00176-GEC   Document 45   Filed 09/28/15   Page 17 of 17   Pageid#: 1081